UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ray Brunson, *pro se*, Petitioner, -against- Joseph T. Smith, Superintendent, Shawangunk Correctional Facility, Respondent. | **MEMORANDUM AND ORDER** 04-CV-5363 (DLI) (RML) |

**DORA L. IRIZARRY, U.S. District Judge:**

Petitioner Ray Brunson seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. After trial by jury in New York State Supreme Court, Kings County, petitioner was convicted of murder in the second degree (N.Y. Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03 [2]). The trial court sentenced the petitioner to concurrent prison terms of twenty-five years to life for the murder conviction and twenty years for the weapons conviction.

Petitioner unsuccessfully moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 claiming ineffective assistance of trial counsel and improper jury instructions. The Appellate Division of the New York State Supreme Court, Second Department, affirmed the judgment and denied petitioner's claim that the trial court's jury charges were erroneous because they were unpreserved for appellate review and were without merit. *People v. Brunson*, 1 A.D.3d 375, 766 N.Y.S.2d 601 (2003). Leave to appeal to the New York Court of Appeals was denied. *People v. Brunson*, 1 N.Y.3d 569, 807 N.E.2d 899, 775 N.Y.S.2d 786 (2003). The Appellate Division of the New York State Supreme Court, Second

Department, denied the petitioner's subsequent application for a writ of error *coram nobis* to vacate on the ground of ineffective assistance of appellate counsel. *People v. Brunson*, 16 A.D.3d 516, 790 N.Y.S.2d 609 (2005). For the reasons discussed below, the petition is denied.

**Background**

On August 26, 2000, at approximately 8:00 a.m., the petitioner fatally shot and killed Cherise Taylor ("Taylor"). Taylor died of six gunshot wounds including one to the head. (R. 298–299.)[1] Although petitioner admitted that he had shot and killed the victim, he claimed that he was justified in doing so.

Shortly after the shooting, at approximately 10:00 a.m., petitioner went to see his girlfriend, Jasmine Deloatch ("Deloatch") and told her that he shot two people. (*Id.* at 57–58, 62–63.) He told her of the events leading up to the shooting: a man had threatened him with a knife and a girl accompanying the man snatched twenty dollars from petitioner and ran into a building. (*Id.* at 64, 95–97.) He stated that he chased the girl into the building and shot her with his handgun. (*Id.* at 65.) According to Deloatch's testimony, petitioner told her that after he had shot the girl in the abdomen, and as the girl begged for mercy, petitioner stood over her and fired again watching her head jump off the floor. (*Id.* at 58, 63, 65–66.)

On December 21, 2000, the petitioner was arrested and placed in an interview room around midnight. (*Id.* at 143–44, 146–49.) The following morning at 7:00 a.m., the assigned detective arrived at the precinct and advised the petitioner of his *Miranda* rights from a printed sheet of paper. (*Id.* at 167-69, 172-73.) The petitioner acknowledged his understanding by writing his initials after each warning and signing the bottom of the sheet of paper. (*Id.* at

1 Page references proceeded by "R." refer to the minutes of the trial.

172–73.) Petitioner then gave an oral and written confession. (*Id.* at 174–78, 198–200.) He subsequently reviewed his written statement and signed it. (*Id.* at 180.)

According to petitioner's statement, on the morning of the incident, Taylor, who had asked petitioner if he had any money to buy drugs, arranged to purchase drugs for herself and petitioner. (*Id.* at 179.) Taylor told him to wait, walked away, and returned with a male friend whom the petitioner did not know. (*Id.*) Petitioner gave Taylor $20 to buy crack cocaine. Both petitioner and Taylor's friend waited while she sought to buy the drugs. When she returned, all three went into a building to smoke the crack cocaine Taylor had just purchased. (*Id.*) Taylor's friend, who was standing next to her, pulled out a gun and pointed it at the petitioner demanding his money. (*Id.*) Petitioner gave him $140 and Taylor and her friend started to go up the stairs toward the roof. The petitioner stepped back toward the stairs leading downward but then turned around, pulled out a pistol, and began firing. (*Id.* at 179–180.) He saw Taylor fall to the floor as her friend ran up the stairs toward the roof. (*Id.* at 180.) Petitioner put his bicycle in the elevator and sent it down. He then ran down the stairs and retrieved it on the first floor and rode away. (*Id.* at 180.)

Later that afternoon, the petitioner repeated his confession on videotape to the Assistant District Attorney ("A.D.A."). (*Id.* at 182, 196, 260, 262, 267–268, 284.) The A.D.A. once again read the petitioner his *Miranda* rights prior to taking his videotaped confession. (*Id.* at 183.)

During the period between petitioner's arrest and the trial, Deloatch married him, visited him in jail sixty to seventy times and spoke to him on the telephone approximately twice a night. (*Id.* at 74–76, 79, 89–90, 97–98, 100, 102.) On October 29, 2001, the night before Deloatch was to testify, the petitioner called Deloatch and threatened to kill her, her mother, and her kids if she testified against him. (*Id.* at 77, 79–80, 98.) The Jury was made aware of these threats. (*Id.*)

At the close of the evidence, the trial court allowed petitioner to review the jury instructions prior to charging the jury. Petitioner had no objections to the jury charge. (*Id.* at 392.) On November 5, 2001, petitioner was found guilty of murder in the second degree and criminal possession of a weapon in the second degree.

**Jury Charge**

Before raising a constitutional claim in federal court, petitioner first must give the state courts a full and fair opportunity to review the merits of the federal constitutional claim. *See* U.S.C. § 2254(b)(1)*; See also O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982). In order to properly preserve an issue for review, petitioner must have fairly presented the issue to the highest state court empowered to hear it. *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

The petitioner contends that the trial court violated his Fourteenth Amendment due process right to a fair trial by failing to properly instruct the jury in its justification charge. This claim was exhausted because it was presented to both the Appellate Division of the New York Supreme Court, Second Department and the New York Court of Appeals. *See People v. Brunson*, 1 A.D.3d 375 (2003); *People v. Brunson*, 1 N.Y.3d 569 (2003).

However, petitioner's claim is procedurally barred because he did not comply with New York's contemporaneous objection requirement. The Appellate Division found that the petitioner's claim was "unpreserved for appellate review since the defendant failed to request specific instructions or object to the court's charge as given." *People v. Brunson*, 1 A.D.3d 375 (2003). Federal courts may not review state court decisions that rest on an adequate and independent state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). The Second Circuit has held that New York State's

contemporaneous objection requirement is an independent and adequate state ground that bars federal habeas review. *See Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999). In order for the procedural bar to apply, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Fama v. Comm'r of Corr. Servs,*, 235 F.3d 804, 809 (2d Cir. 2000) (*quoting Harris v. Reed*, 489 U.S. 255, 261-62, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989)). However, "[i]f a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative." *Harris v. Artuz*, 288 F.Supp. 2d 247, 255 (E.D.N.Y. 2003); *See Harris v. Reed*, 489 U.S. at 264 n.10 (holding that a state court need not fear reaching the merits in an alternative holding as long as it explicitly invokes a state procedural rule as a separate basis for its decision).

Petitioner contends that his claim is not barred because according to *Fama* "when a court uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." 235 F.3d at 810. However, *Fama* also stated that "where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." 235 F.3d 804 n.4 (*citing Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)).

In the present case, the state court stated that "[t]his contention is unpreserved for appellate review since the defendant failed to request specific instruction or to object to the court's charge as given. *In any event*, this contention is without merit." *People v. Brunson*, 1 A.D.3d 375 (internal citations omitted and emphasis added). Therefore, the "in any event" language of the state court's holding makes it a plain statement that the petitioner's claim was procedurally barred.

Petitioner may avail himself of an exception to the independent and adequate state ground doctrine if "the prisoner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Because petitioner does not allege a claim of cause and prejudice or miscarriage of justice he has not established a ground for an exception to the procedural bar. Accordingly, the petition is denied on this ground.

**Petitioner's Traverse**

In his traverse, petitioner appears to raise five new and unexhausted claims that were not raised in his original petition: (1) his girlfriend's testimony was coerced, (2) his confession was coerced, (3) it was improper for the court to charge both intentional murder and depraved indifference murder, (4) he was denied effective assistance of trial counsel, and (5) there is legally insufficient evidence to convict him of second degree murder. Despite his failure to exhaust any of these claims, the court addresses and denies them on the merits. *See* 28 U.S.C. § 2254 (b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")[22]

*Coerced Confession*

Petitioner contends that his Fifth Amendment privilege against self-incrimination was violated because police coercion induced his confession. The police may use a defendant's confession without violating his Fifth Amendment right when the decision to confess is the defendant's free choice. *United States v. Anderson*, 929 F.2d 96, 98 (2d Cir. 1991). "No single

[22] When a district court is confronted with a mixed petition there are three approaches it can take: (1) dismiss the unexhausted claims and stay the consideration of the exhausted claims if there was good cause for petitioner's failure to exhaust his claims and they are not plainly meritless, *Rhines v. Weber*, 544 U.S. 269, 277; 125 S. Ct. 1528; 161 L. Ed. 2d 440 (2005); (2) offer the petitioner the option to either amend the petition to delete the unexhausted claims or return to state court to complete exhaustion before refilling the federal petition, *Rose v. Lundy*, 455 U.S. 509, 522 (1982); or (3) deny the petition on the merits despite the unexhausted claims, 28 U.S.C. 2254 (b)(2).

criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (quoting *Green v. Scully*, 850 F.2d 894, 901 (2d. Cir 1988)). Factors that are considered include: "the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." *Nelson*, 121 F.3d at 833 (citing *Green v. Scully*, 859 F.2d 894, 901–02 (2d Cir. 1988). "Subsidiary questions such as the length and circumstances of an interrogation" are also considered. *Id.* at 833 (*quoting Miller v. Fenton*, 474 U.S. 104, 117, 88 L. Ed. 2d 405, 106 S. Ct. 445 (1985)).

The facts of the present case show that the petitioner's confession was voluntary. After the petitioner was taken into custody, he was put in an interview room unhandcuffed until the detective handling the case reported to the precinct. (R. 148–49, 167–68.) Petitioner was placed in the interview room around midnight and was interviewed at seven in the morning. (*Id.* at 147–49, 167.) When the detective entered the interview room, the petitioner was sleeping. (*Id.* at 168.) The detective provided petitioner with a sandwich and allowed him to eat it. (*Id.*) The detective read petitioner the *Miranda* warnings from a printed sheet of paper before asking him any questions about the death of the decedent. (*Id.* at 168–69.) Petitioner initialed each of the warnings and then signed at the bottom. (*Id.* at 172–73.) The petitioner was again advised of his *Miranda* rights immediately before giving a videotaped statement at 2:15 p.m. (*Id.* at 182–83.) Although there was a delay between the time of arrest and the time of petitioner's custodial interrogation, there is no evidence, nor does petitioner claim, that the police employed physically

abusive or psychologically coercive tactics. Therefore, the petitioner's confession did not violate his Fifth Amendment right against self-incrimination.

*Coerced Testimony*

Petitioner also claims that his conviction was obtained as the result of the coerced testimony of his girlfriend. Petitioner alleges that the prosecution threatened to take away Deloatch's children unless she testified against him.

A claim that coerced, and therefore perjured, testimony was improperly introduced is analyzed under the Due Process Clause of the Fourteenth Amendment. *Drake v. Portuondo*, 321 F.3d 338, 344–45 (2d Cir. 2003) (*citing Napue v. Illinois*, 360 U.S. 264, 269, L. Ed. 2d 1217, 79 S. Ct. 1173 (1959)). A conviction is set aside "if the prosecution knew, or should have known, of the perjury" and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Drake*, 321 F.3d at 345 (*quoting United States v. Agurs*, 427 U.S. 97, 103, 49 L. Ed.3d 342, 96 S. Ct. 2392 (1976).

In *Drake*, the prosecution conceded that its proof at trial included false testimony. 321 F.3d at 343. In contrast, here the prosecution here made no such concession. Nor has petitioner presented any reason to believe that any of the testimony offered by the prosecution was false or that the prosecution knew it was false. Petitioner merely relies on his own conclusory assertion that the prosecution threatened to take away his girlfriend's children if she didn't testify against him. Such an assertion, without more, is insufficient to establish a violation of petitioner's Due Process rights. Therefore, the petition is denied on this ground.

*Twin Count Indictment*

Petitioner contends that it was improper for the trial court to charge the jury with both intentional murder and depraved indifference murder. However, the defendant was convicted of intentional murder and not depraved indifference murder. Since the charge of intentional murder was the first count submitted to the jury and the jury was instructed to proceed directly to the weapons count if they found the defendant guilty of intentional murder, the defendant's claim of prejudice due to a lack of sufficient evidence to support a conviction for depraved indifference murder is meritless.

*Ineffective Assistance of Trial Counsel*

Petitioner claims a violation of his Sixth Amendment right to effective assistance of counsel because his trial lawyer (1) failed to conduct an investigation in order to find the decedent's friend, (2) did not present a justification defense, and (3) did not object to or seek additional jury instructions. *Strickland v. Washington*, 446 U.S. 668, 690–91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), sets forth the standard for ineffective assistance of counsel.

> To prevail under *Strickland*, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' based on 'prevailing professional norms' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' The *Strickland* Court defined a 'reasonable probability' as 'a probability sufficient to undermine confidence in the outcome.'

*Eze v. Senkowski*, 321 F.3d 110, 123 (2003) (*quoting Strickland*, 466 U.S. at 694). Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Petitioner's arguments are without merit. Petitioner fails to address how finding the decedent's friend would have created a reasonable probability that the jury's verdict would have been different. Petitioner shot the deceased six times, including once in the head. Although petitioner claims that his attorney failed to present a justification defense, justification was precisely the defense presented by his counsel to the jury. (R. 408–11.) Petitioner's counsel vigorously and successfully advocated for a justification charge. (*Id.* at 360–84.) Although petitioner faults counsel for failing to object to the jury charge, there was no reason to object since the instructions were proper. The court gave the appropriate justification instructions and specifically stated that the defense of justification is available when the threat of force comes from a third person. (*Id.* at 456–57, 459–60.)

*Legally Insufficient Evidence to Support Conviction*

Petitioner claims that there was insufficient evidence to support his conviction of second degree murder because the people never proved the necessary *mens rea*, that is, "intent to cause the death of another person." N.Y. Penal Law § 125.25 [1]. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a *habeas* petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction. *See Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997). When assessing the legal sufficiency of a state criminal conviction, a *habeas* court is required to consider the trial evidence in the light most favorable to the state, upholding the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319 (emphasis added). Under this test, a *habeas* court must draw all inferences and resolve all issues of credibility in favor of the prosecution. *Id*. at 318–19, 326; *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994).

In the present case, there is sufficient evidence to support a conviction of second degree murder. According to the testimony of the petitioner's girlfriend, after the petitioner shot the deceased in the abdomen and she begged for mercy, petitioner stood over her and fired again, watching her head jump off the floor. (R. 58, 63, 65–66.) This testimony is enough to establish the petitioner's intent to kill at the time of the shooting. Given that all inferences of credibility must be drawn in favor of the prosecution, this court must presume that the jurors found this testimony credible. Therefore, the evidence was sufficient to support a conviction of second degree murder pursuant to N.Y. Penal Law § 125.25 [1].

**Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is denied in its entirety. No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.

DATED: Brooklyn, New York
September 15, 2006

/s/
DORA L. IRIZARRY
United States District Judge